**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Kareem Douglas,<br><br>                                        Plaintiff,<br><br>                    -v-<br><br>Rossana Rosado, *DCJS Commissioner*; Daniel F. Martuscello III, *DOCCS Commissioner*; Raymond A. Tierney, *Suffolk DA*; and Dr. Errol D. Toulon, Jr., *Suffolk Sheriff*,<br><br>                                        Defendants. | 2:25-cv-6529<br>(NJC) (LGD) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is the renewed motion to proceed in forma pauperis ("IFP") filed by Kareem Douglas in relation to a pro se Complaint brought pursuant to 42 U.S.C. § 1983 ("Section 1983") against the following individuals: Commissioner Rossana Rosado ("Rosado") of the New York State Division of Criminal Justice Services ("CJS"); Commissioner Daniel F. Martuscello, III ("Martuscello") of the New York State Department of Corrections and Community Supervision ("DOCCS"); Suffolk County District Attorney Raymond A. Tierney ("Tierney"); and Suffolk County Sheriff Errol D. Toulon, Jr. ("Toulon" and collectively, "Defendants"). (*See* Compl., ECF No. 1; Renewed IFP Mot., ECF No. 6.) For the reasons that follow, the renewed motion to proceed IFP is granted.

Having granted IFP status to Mr. Douglas, the Court has screened the Complaint in accordance with the requirements of 28 U.S.C. § 1915. Upon such screening, the Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for the reasons set forth below.

**BACKGROUND**

On November 24, 2025, Mr. Douglas filed a Complaint pursuant to Section 1983 together with an IFP Motion and a motion seeking entry of a temporary restraining order and a preliminary injunction ("Injunctive Relief Motion"). (Compl., ECF No. 1; IFP Mot., ECF No. 2; Inj. Rel. Mot., ECF No. 3.) By Order dated December 4, 2025 (the "Order"), the Court denied Mr. Douglas's IFP Motion and Injunctive Relief Motion without prejudice and with leave to renew. (Order, ECF No. 5.)

On December 12, 2025, Mr. Douglas timely filed a renewed IFP motion using the Long Form as the Court directed. (Renewed IFP Mot., ECF No. 6.) Mr. Douglas has not renewed the Injunctive Relief Motion.

## I.      The Complaint[1]

The three-page Complaint was filed with an additional 83 pages of exhibits.[2] (Compl. at 1–3; Exhibits, ECF No. 1 at 4–86.) The Complaint alleges:

> Plaintiff was convicted of non-sexually motivated felonies (See Exhibits D and E). The Appellate Division reviewed the designation in 2020 and made a binding judicial determination that the Plaintiff's criminal culpability was non-sexual (See Exhibit F).

> The Defendants had explicit, decade-long notice of the error, reinforced by formal communications in 2008 (Ex. B), 2010 (Ex. C), and judicial orders in 2011 (Ex. G).

---

[1]  Excerpts from the Complaint have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

[2]  In assessing whether a complaint states a plausible claim, this Court may consider "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken," and documents "integral to the complaint." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

2

> The unlawful Level 3 designation resulted in the legal deprivation of protected property and liberty interests . . . proven by unlawful incarceration (Exhibits K and L) and multiple housing denials (Exhibits M, N, O, P).
>
> The unlawful Level 3 designation and the deliberate public shaming have resulted in direct and continuous physical danger to Plaintiff . . . suffering a medically documented seizure (See Exhibit H).
>
> The malicious maintenance of the Level 3 registration has caused the unconstitutional dissolution of the Plaintiff's family unit . . . Specifically, the Plaintiff is legally prevented from residing with his wife (Exhibit I). The systematic harassment endured by his wife is documented in official police reports (Exhibit J) and public shaming (Exhibit Q).

(Compl. at 2, ¶ IV.) The Complaint names Defendants "in their official capacities for Injunctive Relief and in their individual capacities for Money Damages." (*Id.* at 2, ¶ III.)[3] With respect to "Agency Liability," the Complaint alleges that "[t]he constitutional deprivation was caused by the unconstitutional policy, custom, and practice of the Defendant agencies . . . Specifically, the Defendants engaged in a Custom of Malicious Maintenance by ignoring judicial guidance regarding SORA." (*Id.* at ¶ V.) Whereas

> [t]he individual Defendants . . . are sued in their individual capacities for acting with willful, malicious, and deliberate indifference to the Plaintiff's clearly established constitutional rights. The combined malicious conduct of these individual Defendants . . . strips them of the defense of Qualified Immunity.

(*Id.*)

---

[3] The Complaint alleges official capacities claims pursuant to "Mondell" (*id.* at 2, ¶ V) which the Court understands to reference a *Monell* claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). However, "[t]he Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).

Based on the foregoing allegations, the Complaint alleges that Mr. Douglas suffered "[p]hysical [h]arm" including "trauma resulting in a medically documented seizure event (See Exhibit H)" as well as a "[l]oss of [l]iberty/[p]roperty" including "unlawful incarceration (Ex. K and L), housing denial (Ex. M-P), and the unconstitutional loss of marital and familial association (Ex. I and J). (Compl. at 3, ¶ VII.) For relief, the Complaint seeks: (1) "judgment against the Defendants, jointly and severally" for "Declaratory Relief . . . ruling . . . that the Defendants' conduct in maintaining the Plaintiff's Level 3 registration status post-October 2023 was unconstitutional[]"; (2) "a permanent injunction ordering the immediate removal of Plaintiff's Level 3 Sex Offender Registration status and requiring a public retraction and correction"; (3) "compensatory damages in the amount of $6,000,000; and (4) punitive damages in the amount of $10,000,000." (*Id.* ¶ VII.)

## II.     The Relevant State Court Proceedings

The New York State Appellate Division, Second Department denied Mr. Douglas's appeal of his sentence insofar as it designated him as a level three sex offender, and recited the following facts:

> In 2003, the defendant [Mr. Douglas] was convicted, upon a plea of guilty, of, inter alia, kidnapping in the second degree and unlawful imprisonment in the first degree in connection with an armed robbery/burglary of a home. During the home invasion, a father, mother, and 14-year-old boy were tied up, the mother was sexually assaulted by a codefendant in the defendant's presence, and a gun was discharged, with the bullet narrowly missing a 3-year-old child. At one point, the defendant held a gun to the father's head while items were stolen. The defendant was sentenced to a term of imprisonment of 8½ to 10 years followed by a period of post release supervision of 5 years. Upon his release, the defendant was required to register as a sex offender due to his conviction of kidnapping and unlawful imprisonment of children less than 17 years old where he was not their parent, even though he did not commit a sexual act. The Board of Examiners of Sex Offenders assessed the defendant a total of 195 points, which would make him a presumptive level three sex offender.

At a hearing pursuant to the Sex Offender Registration Act (*see* Correction Law art 6–C [hereinafter SORA] ), the People requested that the defendant be designated a level three sex offender. The defendant disputed the assessment of points under risk factors 2 and 13, and sought a downward departure based on the mitigating factor that he did not have sexual contact with the female victim. By order dated August 13, 2018, the County Court denied the defendant's request for a downward departure and designated the defendant a level three sex offender. The defendant appeals.

*People v. Douglas*, 189 A.D.3d 1276, 1277 (2020), *leave to appeal denied*, 36 N.Y.3d 910

(2021); (Compl., ECF No. 1 at 54.) In denying Mr. Douglas's appeal, the Appellate Division

explained the following:

The defendant's claim that his risk level designation should be vacated because the Judge who presided over the SORA hearing was not the same Judge who accepted his plea of guilty and sentenced him, was not raised at any time before the SORA court and is unpreserved for appellate review (*see e.g. People v. Worrell*, 183 A.D.3d 602, 122 N.Y.S.3d 356; *People v. Dipilato*, 155 A.D.3d 792, 63 N.Y.S.3d 525).

The defendant's contention that the Sex Offender Registration Act is unconstitutional as applied to him is unpreserved for appellate review (*see People v. Howard*, 27 N.Y.3d 337, 342, 33 N.Y.S.3d 132, 52 N.E.3d 1158), and, in any event, is without merit (*see People v. Knox*, 12 N.Y.3d 60, 875 N.Y.S.2d 828, 903 N.E.2d 1149; *People v. Suarez*, 147 A.D.3d 802, 45 N.Y.S.3d 801; *People v. Edney*, 143 A.D.3d 793, 38 N.Y.S.3d 817; *People v. Taylor*, 42 A.D.3d 13, 835 N.Y.S.2d 241).

Moreover, contrary to the defendant's contention, the County Court did not improvidently exercise its discretion in denying his request for a downward departure. A defendant seeking a downward departure from the presumptive risk level has the initial burden of "(1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the [SORA] Guidelines; and (2) establishing the facts in support of its existence by a preponderance of the evidence" (*People v. Wyatt*, 89 A.D.3d 112, 128, 931 N.Y.S.2d 85; *see People v. Gillotti*, 23 N.Y.3d 841, 861, 994 N.Y.S.2d 1, 18 N.E.3d 701; *see also Sex Offender Registration Act: Risk Assessment Guidelines and Commentary* at 4 [2006] ). If the defendant makes that twofold showing, the court must exercise its

5

discretion by weighing the mitigating factor to determine whether the totality of the circumstances warrants a departure to avoid an overassessment of the defendant's dangerousness and risk of sexual recidivism (*see People v. Gillotti*, 23 N.Y.3d at 861, 994 N.Y.S.2d 1, 18 N.E.3d 701; *People v. Champagne*, 140 A.D.3d 719, 720, 31 N.Y.S.3d 218). Here, while the defendant identified an appropriate mitigating factor, under the totality of the circumstances, including the violent nature of the home invasion, the level three designation best assesses the risk of reoffense by the defendant and the threat posed to the public safety (*see People v. Gillotti*, 23 N.Y.3d 841, 861, 994 N.Y.S.2d 1, 18 N.E.3d 701; *People v. Marquez*, 165 A.D.3d 986, 987, 84 N.Y.S.3d 572; *People v. Gordon*, 133 A.D.3d 835, 837, 20 N.Y.S.3d 165; Correction Law § 168–l[5]).

The defendant's remaining contention is without merit.

Accordingly, we agree with the County Court's determination designating the defendant a level three sex offender.

*People v. Douglas*, 189 A.D.3d 1276, 1277–78; Compl., ECF No. 1 at 54–55. Mr. Douglas has also annexed the Suffolk County Court's Order, dated September 30, 2011, from which Mr. Douglas appealed. (ECF No. 1 at 57-58.) There, the County Court recited that "one of the assailants, *not Mr. Douglas*, decided to sexually molest and assault the wife and mother of the family" and consequently "the Department of Correctional Services has decided to impose sex offender conditions upon the incarceration of [Douglas], based on his liability as an accomplice." (*Id*. at 57 (emphasis added).) In rejecting Mr. Douglas's challenge to his "treat[ment] as a sex offender based upon the actions of his accomplices," the County Court stated it could "only offer the following admonition: *Consortio Malorum Me Quoque Malum Facit*\* \*'The company of wicked men makes me also wicked.'" (*Id.* at 58 (quoting Moore's English King's Bench Reports, p. 817).)

## LEGAL STANDARDS

Where a plaintiff is proceeding IFP, 28 U.S.C. § 1915 instructs that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or

6

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). At the pleading stage, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)), *aff'd*, 569 U.S. 108 (2013).[4]

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible, a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons*, Ltd., 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a

---

[4] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Cent. Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

### I.    Federal Claims

#### A.  Section 1983 Claims

Section 1983 provides redress for constitutional deprivations and provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)); *accord Jean-Baptiste v. U.S. Dep't of Just.*, No. 23-cv-441, 2024 WL 1193062, at *1 (2d Cir. Mar. 20, 2024) (recognizing that Section 1983 does not provide an independent source of substantive rights). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See Sykes*, 13 F.3d at 519.

8

Here, the Complaint alleges a deprivation of Mr. Douglas's Fifth, Eighth and Fourteenth Amendment rights. More specifically, the Complaint alleges that the maintenance of the Level 3 designation to Mr. Douglas deprives him of "constitutional rights under the Ex Post Facto Clause (Article I, Section 9), the Eighth Amendment (Cruel and Unusual Punishment), and the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution." (Compl. 1 at ¶ 1.)

### i.    *Heck's* Delayed Accrual Rule

Insofar as Mr. Douglas's constitutional claims challenge the execution of his sentence, success on these claims would impugn the validity of a sentence imposed by the state court. In *Heck v. Humphrey*, the United States Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit," the district court must dismiss the complaint if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" and the "conviction or sentence has [not] already been invalidated." 512 U.S. 477, 487 (1994). In other words, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* at 480–90.

Here, success on Mr. Douglas's claims would impugn the validity of his sentence and are therefore not cognizable under Section 1983. Mr. Douglas does not allege that his conviction or sentence has been overturned, nor does he claim that his conviction was unconstitutional. Rather, he asserts that the sentencing court erred in designating him as a sex offender. (Compl. at 2, ¶ IV.) To be sure, in addition to monetary damages, Mr. Douglas seeks an order from this Court "declaring that the Defendants' conduct in maintaining [his] Level 3 registration status post-October 2023 was unconstitutional" and a "permanent injunction ordering the immediate

9

removal of [Mr. Douglas's] Level 3 Sex Offender Registration status and requiring a public retraction and correction." (*Id.* at 3 ¶ VII.A-B.) But the requirement that Mr. Douglas register as a sex offender comes from his 2003 conviction and is therefore barred under *Heck*. *See* Compl., Ex. F at 54 (quoting the New York State Appellate Division, Second Department opinion finding that "[u]pon his release, [Mr. Douglas] was required to register as a sex offender due to his conviction of kidnapping and unlawful imprisonment of children less than 17 years old where he was not their parent, even though he did not commit a sexual act"); *Harris v. New York State Dep't of Corr. & Cmty. Servs.*, No. 20-cv-1028, 2020 WL 5653282, at *2 n.3 (W.D.N.Y. Sept. 23, 2020) (holding that where the requirement to register as a sex offender resulted from a state conviction, "which [plaintiff] does not dispute remains valid, any consequences apparently flowing from it—including the 1999 and 2013 sex offender sentencings, and the alleged sentence extension by [DOCCS]—are barred under *Heck*.") Mr. Douglas must seek habeas relief instead of bringing a Section 1983 claim because "success in [the] action would necessarily demonstrate the invalidity of confinement [pursuant to state law] or its duration" unless the "conviction or sentence has already been invalidated." *Wilkinson v. Dotson*, 544 U.S. 74, 80, 82 (2005) (citations omitted).

Accordingly, the constitutional claims seeking damages, declaratory relief, and injunctive relief are barred by *Heck* and its progeny and are thus not plausible. *See*, *e.g.*, *Wynder v. Linn*, No. 25-cv-2961, 2025 WL 2926543, at *6 (S.D.N.Y. Oct. 10, 2025) (concluding that Heck bars claims for money damages and declaratory relief where a plaintiff's conviction was been upheld on appeal and was not otherwise invalidated); *Murphy v. Travis*, 36 F. App'x 679 (2d Cir. 2002) (applying *Heck* to claims for declaratory relief) (citing *Edwards v. Balisok*, 520 U.S. 641, 648

(1997)) (summary order); *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 201 (S.D.N.Y. 2004) (finding that *Heck* bars injunctive relief when it "directly relates to" the plaintiff's sentence and "seeks to compel specific action pertaining to" the sentence.)

These claims are therefore dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) without prejudice to Mr. Douglas pursuing appropriate appellate relief.

### ii.    Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns." *State Emps.' Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (quotation marks and alterations omitted). Eleventh Amendment immunity also extends to suits for money damages against state officials in their official capacities. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). District courts may raise the issue of sovereign immunity "sua sponte because it affects . . . subject matter jurisdiction." *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993).

Here, Mr. Douglas's official capacity damages claims against Rosado, Martuscello and Tierney are barred by the Eleventh Amendment and are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) and Federal Rule of Civil Procedure 12(h)(3). *See Darcy v.*

11

*Lippman*, 356 F. App'x 434, 436–37 (2d Cir. 2009) (holding that the Eleventh Amendment bars "claim[s] for damages against the individual defendants in their official capacities" as state officials); *Torres v. Spota*, No. 19-cv00296, 2019 WL 3035522, at *3 n.4 (E.D.N.Y. July 10, 2019) (applying Eleventh Amendment immunity to a district attorney) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)); *Griffith v. New York State*, No. 5:23-cv-1266, 2024 WL 16341587, at *5 n.4 (N.D.N.Y. Mar. 20, 2024) ("A dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction.") (citation omitted); *Wang v. Delphin-Rittmon*, 664 F. Supp. 3d 205, 217 (D. Conn. 2023) ("sovereign immunity strips the court of jurisdiction") (citation omitted); *see also Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (per curiam) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.").

### iii.     Prosecutorial Immunity

Prosecutors have absolute immunity from civil suits for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but rather are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Bouchard v. Olmsted*, 775 F. App'x 701, 703 (2d Cir. 2019) (summary order) ("Prosecutors are entitled to absolute immunity with respect to their 'prosecutorial functions,' which include their actions 'as advocates and when their conduct involves the exercise of discretion.'" (quoting *Flagler v. Trainor,* 663 F.3d 543, 547 (2d Cir. 2011) (citing *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). "[A]dvocacy during sentencing proceedings—both in the courtroom and in communications with the Probation Office—falls within the 'traditional functions of an advocate' subject to absolute immunity." *Bouchard*, 775 F.

12

App'x at 703 (citing *Kalina*, 522 U.S. at 131). Thus, insofar as Mr. Douglas seeks to impose liability on Tierney for the Suffolk County District Attorney's office's advocacy during sentencing, such a claim is barred by absolute prosecutorial immunity and is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) and Fed. R. Civ. P. 12(h)(3).

### iv.    Personal Involvement

Although Mr. Douglas has named Tierney and Toulon as defendants, he has not alleged any conduct or inaction attributable to either individual. (Compl., *in toto*). The Supreme Court held in *Ashcroft* that "[b]ecause vicarious liability is inapplicable to ... [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution." 556 U.S. at 676; *see also Tangreti v. Bachmann*, 983 F.3d 609, 618–19 (2d Cir. 2020) (explaining the standard for supervisory liability). Thus, a complaint based upon a violation of Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law and should be dismissed as to that defendant. *Johnson v. Barney*, 360 F. App'x 199, 201 (2d Cir. 2010).

To the extent that Mr. Douglas seeks to impose liability on Tierney and Toulon given the supervisory positions they hold as Suffolk County District Attorney and Suffolk County Sheriff, respectively, he has not sufficiently alleged their personal involvement. The Second Circuit Court of Appeals has made clear that there is no "special test for supervisory liability" and, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official. . . ." *Tangreti*, 983 F.3d at 620. Accordingly, Mr. Douglas has not alleged a plausible claim against Tierney and Toulon and such claims are thus dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

13

**v.** ***Rooker-Feldman*** **Precludes Adjudication of Mr. Douglas's Claims in this Court**

Finally, to the extent Mr. Douglas is attempting to challenge the risk level assigned to him as a result of the state court's proceedings, such a challenge is precluded by the *Rooker-Feldman* doctrine. Under that doctrine—established by two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923), and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983)—federal district courts lack authority to review final state court orders and judgments where the federal court plaintiff seeks relief that invites the federal court to reject or overturn the state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *see also Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (holding the *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases.") (citing 28 U.S.C. § 1257); *see also McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) ("[T]he *Rooker–Feldman* doctrine deprives a federal court of jurisdiction to consider a plaintiff's claim which applies to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments.").

There are four requirements for application of the *Rooker-Feldman* doctrine: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites district court review and rejection of the state court judgment; and (4) the state court judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

14

Here, to the extent Mr. Douglas is seeking reversal of the state court's determination of his risk level assessment, the claim is precluded by the *Rooker-Feldman* doctrine. Mr. Douglas lost in the state court proceeding well before the filing of this action. The injury of which he complains, the determination that he is a level 3 offender, was the result of the state court proceeding. Mr. Douglas seeks reversal of that determination in federal court, but such a challenge is precluded by the *Rooker-Feldman* doctrine. *See Zuneska v. Cuomo*, No. 12-cv-949, 2013 WL 431826, at *1 (E.D.N.Y. Feb. 1, 2013) (holding that plaintiff's challenge to his SORA designation was precluded by *Rooker-Feldman*); *Myers v. Sperazza*, No. 11-cv-292, 2012 WL 6690303, at *2 (W.D.N.Y. Dec. 21, 2012) (challenge to state court's determination that plaintiff is a level 3 offender precluded under *Rooker-Feldman*).

Since all four elements of the *Rooker-Feldman* doctrine are met, this Court has no jurisdiction over Mr. Douglas's claims concerning the propriety of his designation as a level 3 sex offender. *Galtieri v. Kelly*, 441 F.Supp.2d 447, 453 (E.D.N.Y.2006) ("federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments"). Accordingly, this Court lacks jurisdiction to adjudicate the claims set forth in the Complaint and they are thus dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3).

## II.    State Law Claims

A district court "may decline to exercise supplemental jurisdiction over a claim . . . [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023). Having dismissed the federal

15

claims alleged in the Amended Complaint for the reasons set forth above, the Court declines to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J., concurring) (the Second Circuit "takes a very strong position that state issues should be decided by state courts").

Thus, any state law claims that may be liberally construed from the allegations in the Complaint are dismissed without prejudice and with leave to replead in state court.

### III.    Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009). However, leave to amend is properly denied where amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (where amendment would be "futile," leave to amend the complaint should be denied). Here, the deficiencies in the claims presented are substantive and cannot be cured with better pleading. As stated above, however, if Mr. Douglas seeks to challenge the constitutionality of his underlying sentence, he must seek relief through a petition for a writ of habeas corpus. *See Wilkinson v. Dotson*, 544 U.S. at 78–83.

Accordingly, leave to amend would be futile and is thus denied.

### CONCLUSION

For the reasons stated above, this Court grants Mr. Douglas's renewed IFP Motion (ECF No. 6) and dismisses the Complaint (ECF No. 1) as set forth above pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1) and Federal Rule of Civil Procedure 12(h)(3).

The Clerk of the Court shall mail a copy of this Memorandum and Order to Mr. Douglas at his address of record and shall note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
      May 22, 2026

*Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge
